```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

KIMBERLY CZAJKOWSKI,

                      Plaintiff,

     v.                                          **DECISION AND ORDER**
                                                          15-CV-157S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

      1.      Plaintiff Kimberly Czajkowski challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since April 1, 2009, due to, *inter alia*, cervical stenosis, fibromyalgia, bipolar disorder, depression, herniated discs, blood clots, right-hand carpal tunnel, and right shoulder bursitis. (R. at 94-95).[1] Plaintiff contends that her impairments render her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on January 23, 2012. Plaintiff also filed a protective application for supplemental security income on January 25, 2012. The Commissioner denied these applications on May 3, 2012. Plaintiff timely filed a written request for hearing one week later. Thereafter, Plaintiff appeared and testified at a hearing held before ALJ Robert T. Harvey on June 13, 2013. The ALJ considered the case *de novo* and determined on August 12, 2013, that Plaintiff was not disabled under the Act. The Appeals Council denied Plaintiff's request for

---

[1] Citations to the underlying administrative record are designated as "R."

review of the ALJ's decision on December 22, 2014.[2] Plaintiff filed the current action challenging the ALJ's decision on February 19, 2015.

3. On July 29, 2015, Plaintiff filed a Motion for Judgment on the Pleadings, seeking reversal of the Commissioner's final decision. (Docket No. 10). Defendant filed her own motion for Judgment on the Pleadings on December 23, 2015, asking this Court to affirm her decision. (Docket No. 17). For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). The term substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence

---

[2] The ALJ's August 12, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work,

the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

      8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

      9.      Here, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff engaged in substantial gainful activity from June 2012 to March 2013, but there has been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity (R. at 18, 19); (2) Plaintiff's "severe impairments" include bipolar disorder, adjustment disorder, right-hand carpal tunnel syndrome, cervical stenosis, right shoulder impairment, fibromyalgia, obesity, and alcohol dependence (R. at 19); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id.); (4) Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R.

404.1567(a) and 416.967(a) (R. at 21); (5) Plaintiff is capable of performing her past relevant work as an employment specialist and claims clerk (R. at 25). Ultimately, the ALJ determined that Plaintiff has not been under a disability, as defined in the Act, from April 1, 2009, through the date of the ALJ's decision (Id.)

10.  Plaintiff's first challenge to the ALJ's decision is that he erred by failing to properly develop the record as to treating-source statements.  Specifically, Plaintiff suggests that the ALJ's observation that no treating source indicated that Plaintiff could work was a determination that the record was incomplete.  Plaintiff further suggests that the ALJ considered what Plaintiff characterizes as this "gap in the record" to find that Plaintiff could perform her previous work.  In Plaintiff's view, the ALJ should have developed the record further by contacting her treating sources, particularly her psychiatric practitioners.

11.  As an initial matter, Plaintiff is correct that an ALJ generally has an affirmative obligation to further develop the record, if necessary, before making a disability determination.  For example, re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 404.1512(e)(1).  Additional evidence or clarification must also be sought if there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1512(e)(1); Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

12. But "there is no *per se* error for an ALJ to render a disability determination without getting a medical source statement from a treating physician, particularly where the record contains sufficient evidence from which the ALJ can assess the [plaintiff's] residual functional capacity." Cole v. Colvin, No. 13–CV–6258, 2015 WL 1393160, at *11 (W.D.N.Y. Mar. 25, 2015) (citing Tankisi v. Comm'r of Social Sec., 521 Fed.Appx. 29, 33-34 (2d Cir. 2013) (finding that the relevant regulations do not require that the record necessarily contain medical source statements; "the lack of the medical source statement will not make the report incomplete")). "[W]here the evidence received by the ALJ is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may 'make [his or her] determination or decision based on that evidence.'" Guile v. Barnhart, No. 5:07-CV-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010) (quoting 20 C.F.R. § 404.1527(c)(1).

13. This Court is satisfied that further development of the record before the ALJ was unnecessary. The ALJ had before him evidence from Highgate Medical Group, which contained Plaintiff's medical records from the years 2005 to 2013. (R. 284-317, 318-386, 461-474). The ALJ also had before him treatment records from Gosy and Associates Pain Treatment & Neurology, covering Plaintiff's visits from March 2007 to August 2007. (R. at 250-258). Plaintiff's medical records also contained treatment notes from Kenmore Mercy Hospital and Dent Neurological Institute, addressing Plaintiff's visits from April 2010 to October 2011 and June 2010 to March 2012, respectively. (R. 259-283, 387-399, 400-430, 475-478).

14. Further, the ALJ considered Plaintiff's November 2010 and January 2011 psychiatric evaluations. (R. at 22). The ALJ also discussed Plaintiff's January 2012 psychiatric evaluation results, which found "good eye contact and [interactivity], no psychomotor agitation or retardation and did not appear to be in physical distress, and coherent speech and goal directed thoughts." (R. at 22-23). Further, the ALJ discussed that two months later, the examining psychiatric physician, Dr. Sanjay Gupta, "found [that Plaintiff] had coherent speech, goal directed thoughts, low mood, proper orientation, and was able to focus and concentrate." (R. at 22).

15. As the ALJ noted, the findings of Plaintiff's treating psychiatric providers are consistent with the opinions of consultative psychologist, Dr. Thomas Ryan, upon whom the ALJ relied. (R. at 23). During an April 2012 examination, Dr. Ryan determined that Plaintiff had a "normal appearance, intelligible and expressive speech, coherent and goal directed thought processes, appropriate affect, neutral mood, clear sensorium, proper orientation, intact attention and concentration, mildly impaired memory skills, low average cognitive functioning, and fair insight and judgment." (R. at 23). Additionally, the ALJ noted Dr. Ryan's opinion that Plaintiff "is able to follow and understand simple directions and instructions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make appropriate decisions." Id. Dr. Ryan also opined that Plaintiff has "mild limitations in the ability to deal with others and deal with stress." Id. The ALJ also relied extensively on the medical opinion of consultative internist Dr. Donna Miller. (R. at 23).

16.	Given the extensive medical record before the ALJ in this case, this Court finds that there were no obvious gaps that would require remand on the ground that the ALJ failed to fully develop the record.  Contrary to Plaintiff's characterization, the ALJ's observation that no treating source indicated that Plaintiff could not work was an observation, not a determination that the record was undeveloped or insufficient.  This Court is satisfied that the ALJ had before him a complete record from which to measure Plaintiff's RFC, and that further development of that record was unnecessary.  Accordingly, this Court affirms the ALJ's RFC determination on this ground.

17.	Plaintiff's other challenge is to the ALJ's credibility determination, which Plaintiff argues is not supported by substantial evidence.  For the reasons stated below, this argument is unpersuasive.

18.	Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982) (similar).  "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the [ALJ] must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  S.S.R. 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). "When evaluating the credibility of an individual's statements, the [ALJ] must consider the entire case record and give specific reasons for the weight given to the individual's statements."  Id.

19. In assessing Plaintiff's credibility, the ALJ is to consider: (i) Plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, Plaintiff receives or have received for relief of her pain or other symptoms; (vi) any measures Plaintiff uses or have used to relieve her pain or other symptoms; and (vii) other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. § 416.929.

20. An ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96-cv-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

21. Here, the ALJ found Plaintiff's statements regarding her symptoms and resulting limitations as generally credible, but not to the extent alleged. (R. at 23). Notwithstanding Plaintiff's complaints of chronic neck pain spanning the previous 13 years, the ALJ noted that Plaintiff alleged to have been disabled since only 2009. (R. at 24). The ALJ observed that "[t]here is no indication of exacerbation in the record and it is unclear how [Plaintiff] was able to work with her alleged debilitating neck pain for the 10 years prior to her alleged onset date." (R. at 24). Although Plaintiff complained of fibromyalgia that affected all of her joints, she admitted that she did not take any

medication to treat its symptoms.  Id.  Plaintiff also testified that she engaged in "impulse behavior" and stopped her medications because she was "sick" of them.  Id. Additionally, Plaintiff reported during her April 2012 examination with Dr. Donna Miller that she was able to "cook, clean, do laundry, shop, and perform personal hygiene on a daily basis." (R. at 23).  Plaintiff also watched her sister's children and participated in a bowling league.  (R. at 22).  The record therefore supports the ALJ's findings concerning the severity of Plaintiff's subjective complaints.

22. The ALJ further observed that Plaintiff likely stopped working due to a business-related layoff, rather than because of her mental and physical ailments. (R. at 25). This observation is supported by the ALJ's finding that "there is no evidence of a significant deterioration in the claimant's medical conditions since that layoff." Id. In this regard, the ALJ's determination that "the claimant's impairments would not prevent the performance of that job, since it was being performed adequately at the time of the layoff despite a similar medical condition," is grounded in the record.

23. This Court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with the applicable guidance.  The ALJ conducted a thorough examination of the treatment records, medical opinions, and other medical evidence. As such, this Court is satisfied that the ALJ's credibility determination is free of error.

24. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical

evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   October 3, 2016
         Buffalo, New York

                                                /s/William M. Skretny
                                                 WILLIAM M. SKRETNY
                                                United States District Judge